IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

GRANT EARL HATCHER,            )    CIV. NO. 14-00554 JMS/KSC
#A5002772,                     )
                               )    ORDER DISMISSING COMPLAINT
              Plaintiff,       )    WITH LEAVE TO AMEND
                               )    PURSUANT TO 28 U.S.C.
       vs.                     )    §§ 1915(e)(2) & 1915A
                               )
SCOTT HARRINGTON, SEAN         )
ORNELLAS, TERESA MIIKE,        )
ANTONE FOUNTAIN, GLENN         )
FILHOWER, NORMAN               )
YAMAOKA, GINO QURANTES,        )
TED SAKAI,                     )
                               )
              Defendants.      )
_____ )

## ORDER DISMISSING COMPLAINT WITH LEAVE TO AMEND PURSUANT TO 28 U.S.C. §§ 1915(e) & 1915A

Before the court is pro se Plaintiff Grant Earl Hatcher's prisoner civil

rights complaint brought pursuant to 42 U.S.C. § 1983. When he filed this action,

Plaintiff was incarcerated at the Waiawa Correctional Facility ("WCF"), but has

now been transferred to the Oahu Community Correctional Center ("OCCC").

Plaintiff is proceeding *in forma pauperis*.

Plaintiff complains that WCF Warden Scott Harrington; Chief of

Security ("COS") Sean Ornellas; "PREA/OSSA" liaison Teresa Miike; Adult

Correctional Officers ("ACO"s) Lieutenant Antone Fountain; Sergeant Glenn

Filhower; Gino Qurantes; "S.A.S. IV" Norman Yamaoka; and Department of Public Safety ("DPS") Director Ted Sakai violated his civil rights by failing to follow Prison Rape Elimination Act of 2003 ("PREA") guidelines and procedures, as set forth in 42 U.S.C. §§ 15602-15609, after he reported a sexual harassment incident at the prison. *See* Compl., Doc. No. 1.

The court DISMISSES Plaintiff's Complaint pursuant to 28 U.S.C. §§ 1915(e)(2) & 1915A, for failure to state a cognizable claim for relief. Plaintiff is granted leave to amend to correct the Complaint's deficiencies as detailed below, on or before March 5, 2015.

## I.  **BACKGROUND**[1]

Plaintiff claims that, on or about June 20, 2014, Yamaoka violated the PREA when he exposed his genitals, touched himself, and said "Phallus," while Plaintiff and he were alone in Yamaoka's office at WCF. Compl., Doc. No. 1, Count VIII, PageID #16. Plaintiff reported the incident to WCF officials and the Honolulu Police Department ("HPD") the same day.[2] Plaintiff broadly alleges that Harrington, Ornellas, Miike, Fountain, Filhower, Qurantes, and Sakai negligently,

---

[1] For clarity, the court refers to CM/ECF's electronic pagination for all documents in this action, and corrects Plaintiff's Roman numeral designations of his claims.

[2] Although Plaintiff raises his claims solely as violations of the PREA, liberally construed, these statements suggest an Eighth Amendment claim against Yamaoka for sexual harassment.

fraudulently, and with intent to inflict emotional distress, violated the PREA after he reported the incident, by (1) failing to seal Yamaoka's office, computer, and files for the collection of evidence; (2) denying Plaintiff's grievance requesting copies of the PREA investigative report; (3) failing to prevent Yamaoka from reentering WCF; and (4) encouraging DPS employees to ignore PREA guidelines. *See generally*, Compl., Doc. No. 1.

Specifically, Plaintiff alleges that ACOs Filhower and Fountain violated the PREA when they negligently and fraudulently misled and hindered the HPD's investigation by telling HPD Officer Nolan Chang that WCF would conduct an internal investigation of the incident and document their findings with HPD. *Id.*, Counts I, III, PageID #9, 11. Plaintiff concludes this suggested to Chang that HPD need not investigate.

Plaintiff next alleges that Defendants Harrington, Miike, Ornellas, Fountain, and Filhower violated the PREA when they negligently failed to seal Yamaoka's office to preserve evidence of the incident. *Id.*, Counts II, V, PageID #10, 13.

Plaintiff alleges that Harrington fraudulently violated the PREA when he denied Plaintiff's grievance requesting copies of the ongoing PREA investigation. *Id.*, Count IV, PageID #12.

Plaintiff claims that Harrington, Miike, Ornellas, Fountain, and Filhower negligently violated the PREA by allowing Yamaoka to reenter WCF unsupervised to retrieve his personal property on or about June 23, 2014, in violation of a "cease and desist" order. *Id.*, Counts VI, VII, IX, PageID #14, 15, 17. Plaintiff alleges Defendants did this in retaliation for his reporting the incident and with intent to inflict emotional distress.

Plaintiff alleges Yamaoka violated the PREA when he exposed himself to Plaintiff and made a lewd remark. *Id.*, Count VIII.

Plaintiff states that ACO Qurantes told him that Yamaoka was stopped at the WCF gate several weeks before the June 20, 2014 incident, when bullets were found in Yamaoka's car. *Id.*, Count IX, PageID #17. Qurantes allegedly taunted Plaintiff, saying that, since Plaintiff was unarmed, he "would have to run faster than [Yamaoka]." *Id.* Plaintiff alleges Qurantes' joke violated the PREA with intent to inflict emotional distress.

Finally, Plaintiff states that DPS Director Sakai issued a letter on or about July 10, 2014, that is included in the DPS Administration Policy and Procedures Manual, ("PPM") regarding DPS's newly adopted PREA-compliant procedures. *See* http://dps.hawaii.gov/policies PPM ADM.08.08, eff. July 18, 2014. Plaintiff asserts that Sakai's letter stated, "My only comment is that 14

states are refusing to follow P.R.E.A. Guidelines because they are cumbersome and impact unreasonably the Corrections System." *Id.*, Count X, PageID #18. He alleges this statement fraudulently encouraged the other Defendants to ignore PREA guidelines, causing Plaintiff "extreme distress." *Id.*

Plaintiff names all Defendants in their individual and official capacities and seeks compensatory and injunctive relief granting him parole.

## II. LEGAL STANDARD

The court must screen all civil actions brought by prisoners relating to prison conditions or seeking redress from a governmental entity, officer, or employee. 28 U.S.C. § 1915A(a). Complaints or claims that are frivolous, malicious, fail to state a claim, or seek relief from a defendant who is immune from such relief must be dismissed. 28 U.S.C. § 1915(e)(2); 28 U.S.C. § 1915A(b); 42 U.S.C. § 1997e (c)(1).

A complaint that lacks a cognizable legal theory or alleges insufficient facts under a cognizable legal theory fails to state a claim. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). To state a claim, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While Rule 8 does not demand detailed factual allegations, "it demands more than an unadorned,

the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

The court must construe a pro se complaint liberally, accept all allegations of material fact as true, and construe those facts in the light most favorable to the plaintiff. *Resnick v. Hayes*, 213 F.3d 443, 447 (9th Cir. 2000). Leave to amend should be granted if it appears the plaintiff can correct the defects of his or her complaint. *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000).

## III. <u>DISCUSSION</u>

"To sustain an action under section 1983, a plaintiff must show '(1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct deprived the plaintiff of a federal constitutional or statutory right.'" *Hydrick v. Hunter*, 500 F.3d 978, 987 (9th Cir.

2007) (citation omitted), *vacated and remanded on other grounds*, 556 U.S. 1256 (2009); *see also West v. Atkins*, 487 U.S. 42, 48 (1988); 42 U.S.C. § 1983.

## A.     Immunities and Injunctive Relief

Defendants named in their official capacities are not persons subject to suit under § 1983.  *See Will v. Mich. Dept. of State Police*, 491 U.S. 58, 70 (1989); *Flint v. Dennison*, 488 F.3d 816, 824-25 (9th Cir. 2007).  Further, "[t]he Eleventh Amendment bars suits against a state or its agencies, regardless of the relief sought, unless the state unequivocally consents to a waiver of its immunity." *Wilbur v. Locke*, 423 F.3d 1101, 1111 (9th Cir. 2005) (quoting *Yakama Indian Nation v. Wash. Dep't of Revenue*, 176 F.3d 1241, 1245 (9th Cir. 1999)), *abrogated on other grounds by Levin v. Commerce Energy, Inc.*, 560 U.S. 413 (2010).  The only exception is "for prospective declaratory and injunctive relief against state officers, sued in their official capacities, to enjoin an alleged ongoing violation of federal law."  *Id.* (quoting *Agua Caliente Band of Cahuilla Indians v. Hardin*, 223 F.3d 1041, 1045 (9th Cir. 2000)); *see Ex parte Young*, 209 U.S. 123 (1908).

///

///

///

Beyond his request for compensatory damages, Plaintiff seeks release on parole for the remainder of his sentence.[3]  Compl., Doc. No. 1, PageID #20. Such injunctive relief is unavailable in this civil rights suit.  That is, because Plaintiff's request for relief seeks "immediate release from prison" or the "'shortening' of his term of confinement," this request actually challenges "the duration of his confinement," and he must raise this claim in a habeas petition. *See Wilkinson v. Dotson*, 544 U.S. 74, 78-79 (2005) (holding a claim that expressly attacks "the very duration of [a prisoner's] physical confinement . . . lies at the core of habeas corpus") (internal quotation marks omitted); *Preiser v. Rodriguez*, 411 U.S. 475, 487-88 (1973); *cf. Ramirez v. Galaza*, 334 F.3d 850, 859 (9th Cir. 2003) ("[H]abeas jurisdiction is absent, and a § 1983 action proper, where a successful challenge to a prison condition will not necessarily shorten the prisoner's sentence.").

Moreover, when a prisoner challenges the conditions of his confinement and seeks injunctive relief, transfer to another prison renders the request for injunctive relief moot absent some credible expectation of being transferred back.  *See Preiser v. Newkirk*, 422 U.S. 395, 402-03 (1975); *Johnson v.*

---

[3] *See* Hawaii Statewide Automated Victim Information and Notification SAVIN service: https://www.vinelink.com/vinelink. (showing Plaintiff's scheduled release date as "11/08/2018").

*Moore*, 948 F.2d 517, 519 (9th Cir. 1991) (per curiam).  Here, because Plaintiff challenges conditions of confinement at WCF, and seeks release for his protection, his transfer to OCCC renders his request for injunctive relief moot.  *See id.*

Plaintiff's claims for injunctive relief, and against Defendants named in their official capacities for monetary damages, are DISMISSED without leave to amend.

## B.     The PREA Provides No Private Cause of Action

Plaintiff alleges that Defendants negligently, fraudulently, or with intent to inflict emotional distress, violated his civil rights under the PREA.  These claims fail because there is no private cause of action available to Plaintiff under the PREA.

A private right of action "to enforce federal law must be created by Congress."  *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001).  The court's task is to "interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy."  *Id.*  Absent specific Congressional intent, no private right of action exists.  *See id.* ("[C]ourts may not create [a private cause of action], no matter how desirable that might be as

///

///

a policy matter, or how compatible [it may be] with the statute.").  An individual's

> ability to bring a private right of action may be
> authorized by the explicit statutory text or, in some
> instances, may be implied from the statutory text.
> However, an implied right of action is only authorized
> when there is clear evidence Congress intended such a
> right to be part of the statute.

*Nisqually Indian Tribe v. Gregoire*, 623 F.3d 923, 929 (9th Cir. 2010); *see*

*Gonzaga Univ. v. Doe*, 536, U.S. 273, 286 (2002) ("[W]here the text and structure

of a statute provide no indication that Congress intends to create new individual

rights, there is no basis for a private suit, whether under § 1983 or under an

implied right of action.").

   The first step to determine whether a statute authorizes a private right

of action is an examination of the statutory language.  *See Northstar Fin. Advisors,*

*Inc. v. Schwab Invs.*, 615 F.3d 1106, 1115 (9th Cir. 2010); *see also Am. Tel. & Tel.*

*Co. v. M/V Cape Fear*, 967 F.2d 864, 866 (3d Cir. 1992) (noting that the "primary

source of a private right of action is the text of a statute").  If the statute does not

explicitly create a right of action, courts must then determine if one may be

implied from "the statute's language, structure, context, and legislative history."

*Northstar*, 615 F.3d at 1115.[4]

---

[4]  *Cort v. Ash*, 422 U.S. 66, 78 (1975), set forth a four-factor test to determine whether a
statute implies a private right of action: whether (1) the plaintiff is "one of the class for whose

Congress enacted the PREA to address the problem of rape in prison by (1) creating a commission to study the issue and recommend national standards to prevent, detect, and respond to prison rape; (2) applying such national standards to state and federal agencies and departments that maintain prisons or detention facilities; and (3) conditioning eligibility for federal grant money on compliance with such standards.  42 U.S.C. §§ 15602, 15605; *see, e.g.*, *Diamond v. Allen*, 2014 WL 6461730, at *4 (M.D. Ga. Nov. 17, 2014) ("PREA was enacted by Congress to address the problem of rape in prison by creating national standards to prevent, detect, and respond to prison rape."); *Holloway v. Dep't of Corr.*, 2013 WL 628648, at *2 (D. Conn. Feb. 20, 2013) ("The Act is intended to compile data and statistics concerning incidences of prison rape and to develop and implement national standards for the detection, prevention, reduction, and punishment of prison rape."); *Jones v. Schofield*, 2009 WL 902154, at *2 (M.D. Ga. Mar. 30,

---

especial benefit the statute was enacted;" (2) there is "any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one;" (3) it is "consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff;" and (4) the "cause of action [is] one traditionally relegated to state law."  The Court later clarified that courts should not give each factor equal weight:

> The central inquiry remains whether Congress intended to create, either expressly or by implication, a private cause of action. Indeed, the first three factors discussed in *Cort* -- the language and focus of the statute, its legislative history, and its purpose -- are ones traditionally relied upon in determining legislative intent.

*Touche Ross & Co. v. Redington*, 442 U.S. 560, 575-76 (1979).

2009) ("A reading of the [PREA] makes clear that its goal is to lessen the occurrence of rapes in prisons across this Country. Its focus concentrates on statistics, standards, developing information, and regulating federal funding in an effort to lessen prison rapes.").

Nothing in the PREA explicitly or implicitly suggests that Congress intended to create a private right of action for inmates to sue prison officials for noncompliance with the Act. *Amaker v. Fischer*, 2014 WL 4772202, at \*14 (W.D.N.Y. Sept. 24, 2014) ("[E]very court to address the issue has determined that PREA cannot support such a cause of action by an inmate."); *see also Edwards v. Peirce*, 2014 WL 4384039, at \*7 (E.D.N.C. Sept. 3, 2014) (citing *De'lonta v. Clarke*, 2012 WL 4458648, at \*3 (W.D. Va. Sept. 11, 2012), *aff'd*, 548 F. App'x 938 (4th Cir. 2013) (per curiam)); *Chinnici v. Edwards*, 2008 WL 3851294, at \*3 (D. Vt. Aug. 12, 2008) ("The statute does not grant prisoners any specific rights."). Nor does the PREA's language, structure, context, or legislative history suggest that Congress intended to create a private remedy for noncompliance with the PREA. *See* 42 U.S.C. §15607(e) (explicitly directing the Attorney General to enforce compliance with the PREA); *see also Sandoval*, 532 U.S. at 286 (explaining that absent Congressional intent "to create not just a private right but also a private remedy . . . no private right of action exists.").

And, although this court has not discovered any appellate decision addressing this issue, district courts nationwide have found that the PREA does not create a private cause of action that can be brought by an individual plaintiff. *See, e.g.*, *Simmons v. Solozano*, 2014 WL 4627278, at *4 (W.D. Ky. Sept. 16, 2014); *Montgomery v. Harper*, 2014 WL 4104163, at *3 (W.D. Ky. Aug. 19, 2014) ("[T]his Court concludes that the PREA creates no private right of action."); *Chapman v. Willis*, 2013 WL 2322947, at *4 (W.D. Va. May 28, 2013) (same); *Pope v. Or. Dep't of Corr.*, 2012 WL 1866601, at *4 (D. Or. May 22, 2012); *Porter v. Jennings*, 2012 WL 1434986, at *1 (E.D. Cal. Apr. 25, 2012); *Ball v. Beckworth*, 2011 WL 4375806, at *4 (D. Mont. Aug. 31, 2011), R&R adopted 2011 WL 4382074 (D. Mont. Sept. 19, 2011); *Bell v. Cnty. of L.A.*, 2008 WL 4375768, at *6 (C.D. Cal. Aug. 25, 2008).

This court agrees there is no private cause of action available to vindicate violations of the PREA. Plaintiff's claims, which are each brought as violations of the PREA, fail to state a claim for relief and are DISMISSED. *See* 28 U.S.C. §§ 1915(e)(2) & 1915A. Leave to amend these claims as arising under the PREA is futile and this dismissal is with prejudice.

///

///

**C.     Plaintiff Otherwise Fails to State a Claim Under § 1983**

Although Plaintiff alleges that each of his claims arises solely as violations of the PREA, the court addresses his claims separately to provide guidance in the event he decides to amend his Complaint.  Because Plaintiff's claims are often repeated within two or more Counts, the court addresses some Counts twice to reflect where similar issues are raised and provide a coherent overview of the Complaint.

### 1.     *In General*

Read as a whole and liberally construed, Plaintiff's Complaint fails to state a claim for violation of his civil rights.  Plaintiff admits that he reported Yamaoka's alleged sexual harassment to WCF and HPD officials the day it happened.  Plaintiff does not allege that Yamaoka had made similar comments or advances to Plaintiff or others before, or that Yamaoka touched him during the incident.  Plaintiff does not allege that Defendants were aware of Yamaoka's behavior before June 20, 2013, failed to prevent it, or interfered with Plaintiff's reporting the incident.  Rather, the Complaint shows that Defendants responded immediately to Plaintiff's report, began an investigation, allowed him to call HPD, and removed Yamaoka from WCF.  Plaintiff suggests that Yamaoka is no longer employed at WCF, although he saw Yamaoka return on one occasion three days

after the incident to retrieve his belongings. Plaintiff does not allege that he had any further contact with Yamaoka after the incident. These facts, taken together, do not allow the court to reasonably infer that Defendants violated Plaintiff's civil rights. *See Iqbal*, 556 U.S. at 678. Rather, they suggest that Yamaoka's behavior, while reprehensible, was an isolated instance, and that the other Defendants took Plaintiff's allegations seriously and acted on them.

### 2. *Hindering the Investigation: Counts I-III, V, VII*

Plaintiff's conclusion that Defendants Fillhower, Fountain, Harrington, Miike, and Ornellas hindered HPD's investigation by telling Officer Chang that WCF would commence an internal investigation and coordinate with HPD does not plausibly suggest that they violated his civil rights. Instead, it conveys cooperation between State and City agencies. Similarly, Plaintiff's conclusory allegation that Defendants undermined both investigations by failing to secure the "crime scene" makes little sense. Plaintiff does not explain what physical evidence existed in Yamaoka's office that would support (or refute) his claims that Yamaoka exposed himself and made a lewd comment to Plaintiff on June 20, 2013. He does not allege there were video or audio recordings of the incident, or detail any other relevant evidence that was or could have been destroyed in Yamaoka's office. He simply concludes that Defendants' alleged

failure to secure the "crime scene" harmed him. These facts do not plausibly state a claim for relief.

### 3. *Denial of Grievance: Count IV*

Plaintiff's claim that Harrington violated his rights by denying his grievance requesting copies of the ongoing investigation does not state a claim. *See Wise v. Wash. Dep't of Corr.*, 244 F. App'x 106, 108 (9th Cir. 2007) (stating, "an inmate has no due process rights regarding the proper handling of grievances"); *Morgan v. Chakmakian*, 2011 WL 839136, at *5 (C.D. Cal. Jan. 26, 2011) ("[T]he mere participation of prison officials in plaintiff's administrative appeal process is an insufficient basis on which to state a federal civil rights claim against such defendants."), *adopted by*, 2011 WL 837738 (C.D. Cal. Mar. 3, 2011). At most, Harrington's response *may* have violated PREA or WCF guidelines, but it did not violate the Constitution, treaties, or statutes of the United States.

### 4. *Yamaoka's Reentry Into WCF: Counts VI, VII, IX*

Plaintiff's conclusory allegations, that three days after he reported the incident Defendants allowed Yamaoka to collect his belongings at WCF unsupervised, do not state a claim for retaliation. *See* Compl., Doc. No. 1, Count IX, PageId #17. Within the prison context, a viable claim of First Amendment

retaliation consists of five elements: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal ." *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2005); *accord Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012); *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009).

A plaintiff need not show actual inhibited or suppressed speech, but only that there was a chilling effect upon his speech. *Rhodes*, 408 F.3d at 569. The burden is on the plaintiff to *plead* and prove the absence of any legitimate correctional goals for the alleged conduct. *Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995). A plaintiff must also allege facts sufficient to demonstrate a nexus between the alleged adverse action and the plaintiff's protected speech. *See Huskey v. City of San Jose*, 204 F.3d 893, 899 (9th Cir. 2000) (holding that a retaliation claim cannot rest on "the logical fallacy of *post hoc, ergo propter hoc*," *i.e.*, "after this, therefore because of this") (citations omitted).

Nothing within Plaintiff's Complaint suggests that Harrington, Ornellas, Miike, Fountain, Filhower, or Qurantes retaliated against Plaintiff for reporting Yamaoka's alleged sexual harassment by allowing Yamaoka to retrieve

his belongings.  As noted, Defendants acted on Plaintiff's report, communicated

with HPD, relieved Yamaoka of his duties, and initiated an investigation.  Plaintiff

fails to allege facts showing that his First Amendment rights were chilled.

Moreover, Plaintiff does not allege that he had any actual contact with Yamaoka

when he returned to WCF.  Rather, Plaintiff simply concludes that, because he saw

Yamaoka retrieve his belongings at WCF three days after the incident, while

Plaintiff hid behind a door ten yards away, Defendants must have retaliated

against him.  This is insufficient for the court to reasonably infer that Defendants

retaliated against him.

### 5.    *Yamaoka's Sexual Harassment:  Count VIII*

As noted, Plaintiff does not assert an Eighth Amendment claim.[5]

Because he claims that Yamaoka exposed himself and made a lewd comment to

him, however, he suggests a possible Eighth Amendment claim.  *See* Compl.,

Count VIII, PageID #16.

"The Eighth Amendment prohibits cruel and unusual punishment in

penal institutions.  Whether a specific act constitutes cruel and unusual

punishment is measured by 'the evolving standards of decency that mark the

---

[5] It is equally unclear whether Plaintiff alleges state law claims for negligence, fraud, or intentional infliction of emotional distress.

progress of a maturing society.'" *Wood v. Beauclair*, 692 F.3d 1041, 1045-46 (9th

Cir. 2012) (quoting *Hudson v. McMillian*, 503 U.S. 1, 8 (1992)).  In evaluating a

prisoner's claim, courts must consider whether "the officials act[ed] with a

sufficiently culpable state of mind and if the alleged wrongdoing was objectively

harmful enough to establish a constitutional violation." *Hudson*, 503 U.S. at 8

(citation and internal quotation marks omitted); *accord Wood*, 692 F.3d at 1046.

Sexual harassment that includes physical assault is a clear violation of the Eighth

Amendment.  *Schwenk v. Hartford*, 204 F.3d 1187, 1196-97 (9th Cir. 2000);

*accord Boddie v. Schnieder*, 105 F.3d 857, 861 (2d Cir. 1997) ("[S]exual abuse of

a prisoner by a corrections officer has no legitimate penological purpose, and is

'simply not part of the penalty that criminal offenders pay for their offenses

against society.'") (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).

But courts generally differentiate between sexual harassment

involving physical assault and that involving only verbal harassment.  *See Austin*

*v. Terhune*, 367 F.3d 1167, 1171-72 (9th Cir. 2004) ("[T]he Eighth Amendment's

protections do not necessarily extend to mere verbal sexual harassment.") (citing

*Blueford v. Prunty*, 108 F.3d 251, 254-55 (9th Cir. 1997) (finding guard entitled to

qualified immunity for "vulgar same-sex trash talk" with inmates)); *Somers v.*

*Thurman*, 109 F.3d 614, 624 (9th Cir. 1997) (finding qualified immunity applied

19

to female correctional officers who allegedly made improper statements about plaintiff while he showered).

In *Austin*, the Ninth Circuit upheld the district court's dismissal of an Eighth Amendment claim as "not sufficiently serious to constitute an Eighth Amendment violation," because the guard was behind a glass-enclosed control booth when he exposed his penis and made lewd comments, never touched the inmate, and the isolated incident lasted only 30-40 seconds. 367 F.3d at 1171-72; *accord Somers*, 109 F.3d at 624 ("To hold that gawking, pointing, and joking violates the prohibition against cruel and unusual punishment would trivialize the objective component of the Eighth Amendment test and render it absurd."); *see also Jonas v. Idaho*, 2006 WL 3197158, *3 (D. Idaho Nov. 3, 2006) (finding prison physician's allegedly obscene gesture during inmate's medical appointment insufficient to state an Eighth Amendment claim).

Moreover, even when sexual harassment in prison involves brief inappropriate contact, the Ninth Circuit has generally declined to find an Eighth Amendment violation. *See Watison*, 668 F.3d at 1112-14 (finding no Eighth Amendment violation against a guard who allegedly rubbed his thigh against a prisoner using the toilet, smiled, then left the cell laughing); *Berryhill v. Schriro*, 137 F.3d 1073, 1076 (8th Cir. 1998) (affirming summary judgment for defendant

on Eighth Amendment claim that alleged a prison employee briefly touched ("mere seconds") an inmate's buttocks during "horseplay," even though such action, unaccompanied by sexual comments, was an improper sexual advance that "embarrassed" plaintiff); *cf.*, *Smith v. L.A. Cnty.*, 2010 WL 2569232, *5 (C.D. Cal. Apr. 22, 2010) (finding that pretrial detainee failed to state due process claim, or unreasonable search claim, based on allegations that guard pulled inmate's boxers to look at his buttocks, inserted his hand between inmate's buttocks, and cupped inmate's genitals during search), *adopted by* 2010 WL 2572570 (C.D. Cal. June 19, 2010), *aff'd*, 452 F. App'x 768 (9th Cir. 2011); *Osterloth v. Hopwood*, 2006 WL 3337505, at *6-7 (D. Mont. Nov. 15, 2006) (same).

To the extent Count VIII can be liberally construed as an Eighth Amendment violation, it fails to state a claim.

### 6. *Defendant Qurantes' Taunt: Count IX*

Qurantes' taunt that Yamaoka had bullets in his car does not rise to a violation of the Eighth Amendment. "[T]he exchange of verbal insults between inmates and guards is a constant, daily ritual observed in this nation's prisons" of which "we do not approve," but which do not violate the Eighth Amendment. *Somers*, 109 F.3d at 622 (internal quotation marks omitted); *Oltarzewski v. Ruggiero*, 830 F.2d 136, 139 (9th Cir. 1987) ("[V]erbal harassment or abuse . . .

[alone] is not sufficient to state a constitutional deprivation under 42 U.S.C. § 1983.") (citation and internal quotation omitted); *see also Keenan v. Hall*, 83 F.3d 1083, 1092 (9th Cir. 1996) (a deprivation of "peace of mind" does not support a constitutional claim). Plaintiff fails to state a claim under the Eighth Amendment against Qurantes.

Plaintiff's claims in Counts I-IX are DISMISSED for failure to state a cognizable claim for relief pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A. Plaintiff is granted leave to amend these claims if possible, subject to further screening and adversarial proceedings.

### 7. *Claims Against DPS Director Ted Sakai: Count X*

Finally, Plaintiff states that DPS Director Sakai issued a letter on July 10, 2014, that was included in the DPS Administration PPM, ADM.08.08, which allegedly encouraged Defendants to ignore PREA guidelines. *See* Compl., Doc. No. 1, Count X, PageID #18. As noted, this fails to state a claim under the PREA.

As important, Plaintiff's allegation is simply incorrect. Policy No. ADM.08.08, is a detailed, forty-five page administrative policy governing the procedures DPS and its employees must follow to prevent, detect, and respond to allegations of prison rape in Hawaii's prisons to comply with PREA guidelines

and receive federal grants.  http://dps.hawaii.gov/policies.[6]  Director Sakai

approved this policy on July 18, 2014, several weeks after the incident at issue

here.  *See* ADM.08.08.54.0 (Scope).  The DPS' Administration Prison Rape

Elimination PPM is followed by an additional twenty-two pages of forms and

letters of comment.  *Id.*  The July 10, 2014 letter to which Plaintiff refers was

actually written by Jay Ishibashi, MCEC Agent, HGEA, AFSCME, and was

addressed *to,* not *from*, Director Sakai.[7]  *See id.*, PPM ADM.08.08 (pdf attached at

page 65).

In the letter, Ishibashi thanks Sakai for allowing his organization to

review and comment on the proposed DPS PREA policy and procedures before

they were adopted.  Ishibashi reports that he received only one comment from his

members, which stated, "('My only comment is that 14 states are refusing to

follow PREA guidelines because they are cumbersome and impact unreasonably

the Corrections system')."  *Id.*  Ishibashi says that his staff responded to the

---

[6] The court takes judicial notice that PPM, ADM.08.08, which Plaintiff refers to in his pleadings, is publicly available and labeled "Not confidential."  *See Lee v. City of L.A.*, 250 F.3d 668, 689-90 (9th Cir. 2001); *see also Anderson v. Holder*, 673 F.3d 1089, 1094 n.1 (9th Cir. 2012) ("We may take judicial notice of records and reports of administrative bodies.") (citing *Mack v. S. Bay Beer Distrib., Inc.*, 798 F.2d 1279, 1282 (9th Cir. 1986), *overruled on other grounds by Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104 (1991)); Fed. R. Evid. 201(b).

[7] These acronyms stand for the Managerial Confidential Employee Chapter of the Hawaii Government Employees Association, American Federation of State, Federal, and Municipal Employees.

commentator.  Plaintiff incorrectly attributes this MCEC member's comment to

Ishibashi, as being authored by DPS Director Sakai, despite Sakai's explicit

approval of the PPM.  Plaintiff therefore fails to state a claim against Sakai under

the PREA or any other federal law or constitutional provision.  Because

amendment of this claim is futile, Count X is DISMISSED with prejudice.

**D.    State Law Claims**

Although Plaintiff asserts that Defendants negligently, fraudulently,

and with intent to inflict emotional distress, violated the PREA, he does not allege

any violation of state law or provide facts from which the court can liberally

construe or plausibly infer that he is making such state law tort claims.  Plaintiff is

further notified that, unless he can amend his Complaint to state at least one

cognizable federal claim, this court lacks jurisdiction over state law claims.  *See*

28 U.S.C. § 1367(c)(3) (discussing when a federal court may accept or decline

supplemental jurisdiction over state law claims).  This decision does not, however,

prevent Plaintiff from raising such state law claims in the state court.

## IV.  LEADE TO AMEND

Plaintiff's Complaint is DISMISSED pursuant to 28 U.S.C.

§ 1915(e)(2); 28 U.S.C. § 1915A(b); 42 U.S.C. § 1997e (c)(1).  He may file an

amended complaint on or before **March 5, 2015**, to cure the deficiencies in those claims that have been dismissed with leave to amend.

Local Rule 10.3 requires that an amended complaint be complete in itself without reference to any prior pleading and the court will not refer to the original pleading to make any amended complaint complete. Defendants not named in the caption and claims not realleged in an amended complaint are deemed waived.[8] *See King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987). An amended complaint generally supersedes the original complaint. *See Loux v. Rhay*, 375 F.2d 55, 57 (9th Cir. 1967). Each claim and the involvement of each Defendant must be sufficiently alleged in the amended complaint. Plaintiff is notified that he must comply with the Federal Rules of Civil Procedure and the Local Rules for the District of Hawaii if he decides to amend his pleading.

## V.  28 U.S.C. § 1915(g)

If Plaintiff fails to file an amended complaint correcting the deficiencies identified in this Order on or before **March 5, 2015**, he is notified that this dismissal may later count as a "strike" under the "3-strikes" provision of 28

---

[8] Claims dismissed without leave to amend need not be repled in an amended complaint to preserve them for appeal. *See Lacey v. Maricopa Cnty.*, 693 F.3d 896, 928 (9th Cir. 2012) (*en banc*). However, "claims that have been dismissed with leave to amend and are not repled in the amended complaint will be considered waived." *Id.*

U.S.C. § 1915(g). A prisoner may not bring a civil action or appeal a civil

judgment *in forma pauperis* under 28 U.S.C. § 1915

> if the prisoner has, on 3 or more prior occasions, while
> incarcerated or detained in any facility, brought an action
> or appeal in a court of the United States that was
> dismissed on the grounds that it is frivolous, malicious,
> or fails to state a claim upon which relief may be
> granted, unless the prisoner is under imminent danger of
> serious physical injury.

28 U.S.C. § 1915(g).

## VI. <u>CONCLUSION</u>

IT IS HEREBY ORDERED that:

(1)     The Complaint is DISMISSED for failure to state a claim.

Specifically, Plaintiff's claims alleged under the PREA, claims for injunctive

relief, damages claims naming Defendants in their official capacities, and Count X

as alleged against DPS Director Sakai are DISMISSED with prejudice. Any

remaining claims are DISMISSED with leave granted to amend as detailed above.

(2)     Plaintiff may file an amended complaint curing the deficiencies noted

above on or before **March 5, 2015.** Failure to timely amend the Complaint and

cure its pleading deficiencies may result in **DISMISSAL** of this action for failure

to state a claim, and may be counted as a strike pursuant to 28 U.S.C. § 1915(g).

(3)     The Clerk of Court is directed to mail Plaintiff a form prisoner civil

rights complaint so he can comply with the directions in this Order.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, February 5, 2015.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*Hatcher v. Harrington, et al.*, 1:14-cv-00554 JMS; scrng 2015;
C:\Users\npassamaneck\AppData\Local\Temp\notes843E20\Hatcher 14-554 jms #2 (dsm ftsc PREA, 8th Amd).wpd

27